**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE APPLICATION OF<br>**ELECTRIC SOLIDUS, INC. FOR**<br>**JUDICIAL ASSISTANCE**<br>**PURSUANT TO 28 U.S.C. § 1782** | Case No. _____ |

**DECLARATION OF JERRY DESHIELD SAMUEL IN SUPPORT OF**
**ELECTRIC SOLIDUS, INC.'S PETITION FOR JUDICIAL**
**ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, **Jerry DeShield Samuel**, declare pursuant to 28 U.S.C. § 1746(1) as follows:

**<u>Professional Background and Experience</u>**

1) I obtained a Bachelor of Laws Degree (with honours) from Cardiff Law School in 2004 and was duly called to the Bar of England and Wales in July 2005. I was admitted to practice as a Barrister of the Eastern Caribbean Supreme Court (Virgin Islands) in the British Virgin Islands ("BVI") in September 2005 and I am employed as a partner in the Litigation Department of the law firm Conyers Dill & Pearman ("Conyers") in the BVI. I have more than 20 years of experience practicing commercial litigation in the BVI, specializing in shareholder disputes, insolvency, urgent interim relief, asset tracing and enforcement of judgments. I regularly appear as a Barrister before the Commercial and Civil Divisions of the High Court of Justice in the BVI and the Eastern Caribbean Court of Appeal. My CV is attached hereto as **Exhibit 1**.

2) I am duly authorized to submit this declaration in support of the Application (the "Application") of Electric Solidus, Inc. ("Swan"/"Petitioner") for an order pursuant to 28 U.S.C § 1782 to take discovery from Synteq Digital, Inc. ("Synteq Digital").

3) Conyers represents Swan, the registered member of 20% of the shares of 2040 Energy Ltd ("2040 Energy") and has been instructed to seek leave from the Eastern Caribbean Supreme Court, in the Commercial Division of the High Court of Justice in the Territory of the Virgin Islands, (the "BVI Court") to bring derivative proceedings on behalf of 2040 Energy. Conyers also represents Cory Klippsten ("Klippsten") in his capacity as a director of 2040 Energy in a pending proceeding

initiated in the BVI Court in which Klippsten seeks to avail himself of his right under BVI law, as a director in the 2040 Energy joint venture, to inspect and take copies of certain documents, books and records of 2040 Energy.

4) Unless otherwise noted, the information contained in this declaration is within my personal knowledge or was obtained from my review of documents or other reliable sources. Nothing stated in this declaration is intended to waive any legal privilege of Swan or Klippsten.

**Legal Claims for Which Evidence is Sought**

5) The background leading to proceedings before the BVI Court may be summarized as follows. In or about mid-2023, Petitioner entered into a joint venture with Tether Investments S.A. de CV (fka Tether Investments Ltd.) ("Tether") to form 2040 Energy. Petitioner was the registered member of 20% of the shares of 2040 Energy and was represented by its founder, Klippsten, who serves as a director of 2040 Energy, along with Mr. Giancarlo Devasini ("Devasini") and Jean-Louis Van der Velde ("Van der Velde"). Devasini and Van der Velde were appointed as directors by Tether (the "Tether-Appointed Directors").

6) Petitioner retained Conyers in relation to serious concerns that the Tether-Appointed Directors violated their fiduciary duties to 2040 Energy by conspiring with Tether and others to strip 2040 Energy of certain of its assets and to help Tether acquire those assets at a steeply discounted price or in some cases for no consideration (the "Related Party Sale"). To obtain information about the Related Party Sale, Klippsten, as director of 2040 Energy, instructed Conyers to file a proceeding seeking to inspect and take copies of certain documents, books and records of 2040 Energy. Subsequently, Swan retained Conyers to seek leave from the BVI Court to pursue derivative claims on behalf of 2040 Energy against the Tether-Appointed Directors in England.

7) On 25 July 2025, Conyers sent a Letter Before Action to 2040 Energy and the Tether-Appointed Directors providing "Notice of Intended Derivative Proceedings and Breach of Fiduciary Duty (Related Party Sale to Tether Investments Ltd)" to 2040 Energy. In that letter, a copy of which is attached hereto as **Exhibit 2**, and the contents of which I expressly incorporate herein, Conyers

set out the factual and legal bases for 2040 Energy's anticipated breach of fiduciary duty claims against the Tether-Appointed Directors. Conyers informed 2040 Energy and the Tether-Appointed Directors that, absent a satisfactory resolution of the claims, Swan intended to initiate proceedings in the BVI Court seeking leave to pursue the claims on behalf of 2040 Energy (the "Anticipated BVI Proceeding"). 2040 Energy responded to the letter (via its BVI counsel, Forbes Hare), but the parties have not resolved the claims set forth therein. Thus, we anticipate filing of proceedings in the BVI Court on behalf of the Petitioner.

8) Conyers have been instructed to initiate the Anticipated BVI Proceeding as soon as possible.

9) There are certain related proceedings pending in various jurisdictions. I previously mentioned the proceeding initiated by Klippsten in the BVI Court seeking to inspect certain documents, books and records of 2040 Energy. In addition, there is a pending proceeding in England captioned *Tether Investments S.A. de C.V. and 2040 Energy Limited v. Electric Solidus*. Finally, Swan commenced a proceeding in the United States District Court for the Central District of California, 24-cv-8280. However, we understand that proceeding has been stayed indefinitely, pending arbitration and is in the process of being withdrawn. As far as we are aware, as at the date of making this declaration, none of these proceedings prevent the Petitioner from bringing the Anticipated BVI Proceeding.

10) Under BVI law, a member of a company may be granted permission to pursue a derivative claim on behalf of the company, upon consideration of certain statutory factors. These factors, set out in section 184C(2) of the BVI Business Companies Act, 2004 (the "Act"), include:

   a) whether the member is acting in good faith;

   b) whether the derivative action is in the interests of the company taking account of the views of the company's directors on commercial matters;

   c) whether the proceedings are likely to succeed;

   d) the costs of the proceedings in relation to the relief likely to be obtained; and

   e) whether an alternative remedy to the derivative claim is available.

11) Further, under section 184C(3) of the Act, the Court must also be satisfied that:

a) the company does not intend to bring, diligently continue or defend, or discontinue the proceedings, as the case may be; or

b) it is in the interests of the company that the conduct of the proceedings should not be left to the directors or to the determination of the shareholders or members as a whole.

12) In the Anticipated BVI Proceeding, Petitioner will have to satisfy the BVI Court, on the balance of probabilities, that permission to bring the derivative claim is warranted, by submitting a claim form supported by evidence on affidavit addressing each of these factors and the appropriate exercise of the BVI Court's discretion. 2040 Energy will have the opportunity to file evidence in response, and Petitioner will have a final right of reply. Once evidence is closed, the parties will file written submissions and supporting legal authorities. The BVI Court will hold a hearing at which the parties will be legally represented to make oral submissions and for the Court to determine the application.

13) Petitioner intends to use the evidence sought through the present Application to support the Anticipated BVI Proceeding, including to establish that the third factor – whether the proceedings are likely to succeed – is satisfied. In determining whether the proceedings are likely to succeed under BVI law, the BVI Court will consider whether it is more probable than not that the proceedings will succeed, but does not require absolute certainty or a probability of success that is very strong to arrive at this conclusion (Basab Inc. v Accufit Investment Inc and Double Key International Limited[1]). The BVI Court will make this determination based on a full and proper examination of the evidence and submissions before it, without descending into a mini-trial on the merits (ZVI Dekel v Clerkenwell Lifestyle Limited[2]).

14) As set out in the Letter Before Action, Petitioner intends to assert, *inter alia*, that the Tether-Appointed Directors breached their fiduciary duties to 2040 Energy with respect to the Tether-Appointed Directors' alleged sale at an undervalue of certain assets by 2040 Energy, in violation of, inter alia, sections 120, 121, and/or 122 of the BVI Business Companies Act. Those sections establish the statutory duties of a director of a BVI company, the requirements being that in

---

[1] Claim No. BVIHCMAP 2014/0020.
[2] Claim No. BVIHC (COM) 0466/2024.

performing his duties and exercising his powers, a director must: i) act honestly and in good faith in what he believes to be the best interest of the company; ii) exercise his powers for a proper purpose in a manner not contrary to the Act or the memorandum or articles of the company; and iii) exercise the care diligence and skill that a reasonable director would exercise in the same circumstances, taking into account, *inter alia*, the nature of the company, the nature of the decision and the position of the director and the responsibilities undertaken by him.

15) In assessing whether a director has acted in good faith or for a proper purpose in relation to these statutory duties under BVI law, there is an objective overlay in that the BVI Court will look for independent, objective evidence and will consider all evidence concerning the director's decision-making processes to test the director's claim that he acted bona fide (Independent Asset Management Company Ltd. v Swiss Forfaiting Ltd.[3]). In other words, the BVI Court will consider whether an intelligent and honest man in the position of a director of the company concerned could, in all the circumstances, have reasonably believed that the transaction was for the benefit of the company (Lau Man Sang, James and Others v King Bun Limited and Others[4]).

16) Further, in analyzing whether a director has acted for a proper purpose, the BVI Court will apply a four-step test (Independent Asset Management Company Ltd. V Swiss Forfaiting Ltd.[5]) to:
   a) Identify the power whose exercise is in question;
   b) Identify the proper purpose for which that power was delegated to the directors;
   c) Identify the substantial purpose for which the power was in fact exercised; and
   d) Decide whether that purpose was a proper purpose.

17) In the Anticipated BVI Proceeding, the Petitioner will contend, inter alia, that there is no evidence that the Tether-Appointed Directors sought any independent third-party valuation of the Machine Assets and the valuations used to justify the Related Party Sale were provided by firms with extensive ties to Tether. The Petitioner will assert that this approach by the Tether-Appointed Directors was to the detriment of 2040 Energy and in violation of the Tether-Appointed Directors' fiduciary duties. Therefore, Petitioner seeks information from Synteq Digital

---

[3] Claim No. BVIHCMAP 2016/0034.
[4] Claim No. BVIHCMAP 20212/0034.
[5] Claim No. BVIHCMAP 2016/0034.

regarding its valuation process, its relationship with Tether, the Tether-Appointed Directors and other related individuals and entities, and its knowledge of and/or participation in the Related Party Sale and the *En Masse* Resignations. The Petitioner is required to put all material it intends to rely on in support of the Anticipated BVI Proceeding before the BVI Court and this information will help Petitioner to establish, inter alia, that the derivative claims to be brought in England - if permission to proceed is granted - are likely to succeed. Based on my experience and the matters above, I believe that the BVI Court is likely to grant leave to the Petitioner.

18) With regard to the requirement to obtain leave from the BVI Court, section 184C(6) of the Act states that, "Except as provided in this section, a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company". It is established that as a matter of construction, the effect of this section, read with the remainder of section 184C of the Act, is that obtaining leave from the BVI Court is necessary in order to bring derivative proceedings on behalf of a BVI company in a foreign jurisdiction, such as in England (ZVI Dekel v Clerkenwell Lifestyle Limited).

**<u>The BVI Court Would be Receptive to this Discovery</u>**

19) It is not intended that Synteq Digital will be a party to the Anticipated BVI Proceeding. There are limited circumstances in which the BVI court will exercise its power to order third parties to make pre-action disclosures in support of contemplated claims. None of those circumstances apply here and in the premises the BVI Court would not make a pre-action disclosure order against Synteq Digital as a foreign person outside the BVI Court's jurisdiction.

20) However, in the absence of restrictions imposed by the U.S. Court, any evidence obtained from Synteq Digital through the Application for use in the Anticipated BVI Proceeding will be admissible in the BVI Court. The courts in the BVI are receptive to evidence lawfully obtained abroad for use in BVI proceedings, including through U.S. judicial assistance and routinely accept such evidence. In these circumstances, I do not have any reason to believe that the BVI Court would not be receptive to the evidence obtained through the Application in the Anticipated BVI Proceeding, subject to any limitations placed on the use of that evidence by the U.S. Court.

21) Applying for U.S. judicial assistance through the Application does not circumvent any law or public policy of the BVI.  There is no specific policy in BVI law that would prohibit use of the type of records sought by the Application; to the contrary, the evidence sought is of the type ordinarily used to support such commercial claims.

22) I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of December 2025

**JERRY DESHIELD SAMUEL**